George B. Newhouse, Esq. (State Bar No. 107036)
george@richardscarrington.com
**RICHARDS CARRINGTON, LLC**
545 S. Figueroa Street, 7th Floor
Los Angeles, California 90017
Telephone: (213) 348-9016
Facsimile:  (213) 348-9017

Joseph F. Vinas (admitted p*ro hac vice*)
joevinas4@yahoo.com
**VINAS & GRAHAM, PLLC**
1210 West Clay, Suite 12
Houston, Texas 7019
Telephone: (713) 229-9992
Facsimile: (713) 229-9996

Attorneys for Defendant
BRIAN MICHAEL GAHERTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| United States of America, | Case No. 2:23-cr-00184-RGK |
|---|---|
| Plaintiff, | **SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE** |
| vs. | **SENTENCING DATE: June 17, 2024 at 10:00 a.m.** |
| Brian Michael Gaherty, | |
| Defendant. | |

**PROOF OF SERVICE**

**TO THE HONORABLE R. GARY KLAUSNER:**

Brian Michael Gaherty submits this memorandum for the Court's consideration when determining a just and appropriate sentence.

## I.      INTRODUCTION

Brian Michael Gaherty stands before the Court after having pled guilty to Threatening a United States Official. The Court has a wide range of sentences before it[1] and it is our request that the Court hand down a sentence below the recommended Guideline range in this case[2]. According to the United States Probation Department, the Federal Sentencing Guidelines call for a sentence of 33 – 41 months which is a range far harsher than required and called for under 18 U.S.C. §3553(a). Should the Court sentence Mr. Gaherty to such an extraordinarily long prison sentence, nobody will benefit. Conversely, lengthy confinement will impose undue harm upon the system at large when the Court holistically considers the facts of the case. Mr. Gaherty is a sixty-two-year-old man with various chronic health conditions that cannot be adequately treated in the Bureau of Prisons. Should the BOP attempt to

---

[1] *United States v. Booker,* 543 U.S. 220, 260 – 262 (2005) (making the Sentencing Guidelines advisory, not mandatory); *Gall v. United States,* 552 U.S. 38, at 52 (2007) ("'It has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as an unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.'") (quoting *Koon v. United States,* 518 U.S. 81, 113 (1996)).

[2] *Gall v. United States,* 552 U.S. 38, 51 (2007) ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard."); *United States v. Rowan,* 530 F. 3d 379, 381 (5th Cir. 2006) ("When the district court imposes a non-Guidelines sentence, we 'may consider the extent of the deviation, but must give deference to the district court's decision that the §3553(a) factors, on a whole, justify the extent of the variance. 'Even if we 'might have reasonably concluded that a different sentence was appropriate, [this] is insufficient to justify reversal of the district court.'").

care for Mr. Gaherty, the cost would outweigh any benefit to the community or any of the victims in the case.

## II.   FACTORS FOR DOWNWARDLY DEPARTING FROM THE SENTENCING GUIDELINE RANGE

### A. Cooperation with Law Enforcement

First, the Court should downwardly depart and vary from the U.S. Probation Department's suggested range based upon Brian Michael Gaherty's immediate willingness to cooperate with the investigation and prosecution of criminal activity.

In December 2022, two Federal Bureau of Investigation agents showed up unannounced at Mr. Gaherty's door. He welcomed them into his home and answered all questions they had. They asked if Mr. Gaherty had a knife collection, but he did not. The agents asked Mr. Gaherty if he had firearms and he offered to give them to the agents. They declined. The agents left Mr. Gaherty's home without arresting him or taking him into custody. The United States did not charge Mr. Gaherty with a crime until over four months had elapsed from the time the agents were in his home.

After he was arrested, Mr. Gaherty continued his cooperation with the investigation by consenting to an interview with the United States Capitol Police in April 2023.

### B. USSG §5K1.1 Motion Not Necessary

Because the United States Sentencing Guidelines are merely advisory, the Court no longer needs a government motion to depart based upon cooperation.[3] The Court should reduce Brian Michael Gaherty's sentence because of his willingness to cooperate with law enforcement throughout the pendency of the case.

---

[3] *U.S. v. Robinson,* 741 F.3d 588 (5th Cir. 2014) ("[A] sentencing court has the power to consider a defendant's cooperation under §3553(a), irrespective of whether the Government files a §5K1.1 motion.").

3

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.  USSG §5H1.3: Mental and Emotional Conditions

On June 23, 2016, Brian Gaherty's life changed forever[4].  He left his home that evening to wash his truck like he had so many times before.  When he got home, he was sitting in his driveway minding his own business.  Mr. Gaherty saw a suspicious car driving up and down his street.  He saw the passenger get out and approach him with a gun.  Mr. Gaherty got up to run, but the assailant shot him in the right hip. Brian lay on the ground, pretending to be dead, while the man rifled through his pockets.  After he heard the car leave, Mr. Gaherty crawled across the street to his neighbor's house where they called 9-1-1.

Even a cursory review of EXHIBIT 7,[5] attached, shows the extent of the damage – both physically and mentally – that Mr. Gaherty has suffered over the last eight years.  Mr. Gaherty has attended well over fifty psychotherapy sessions since he became the victim of a violent crime.  Reviewing the records, or their summary, one can read that Mr. Gaherty has been diagnosed with chronic, recurring Post Traumatic Stress Disorder (PTSD) as a result of being shot.[6]  Mr. Gaherty also has a Bipolar Type I, mixed disorder diagnosis, no doubt triggered by being a victim of gun

---

[4] See EXHIBIT 7, pg. 2578.

[5] EXHIBIT 6 is a summary of the 2611 pages of medical records from the Harris Health System.  In addition to EXHIBIT 7 consisting of 2611 pages, it contains very sensitive medial and mental health information about Mr. Gaherty.  Therefore, it has not been filed with the Clerk, but is available to be filed under seal, or delivered directly to the court on a hard drive, should the Court desire to directly review the medical records. EXHIBIT 6 is an abbreviated summary of EXHIBIT 7.

[6] See EXHIBIT 7, pgs. 2, 13, 32, 49, 75, 112, 113, 130, 149, 200, etc.

4

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

violence.[7]   Mr. Gaherty suffers from nightmares[8], hypervigilance[9], insomnia[10], paranoid delusions and ideations[11], major depressive disorder[12], anxiety[13], flashbacks[14], intrusive memories of being shot[15], and other symptoms.  Mr. Gaherty routinely wakes in the middle of the night to patrol his home and stand guard against any would be intruders.[16]  Mr. Gaherty has lived in constant fear since June 23, 2016.  Normally a very social and involved member of his community[17], Mr. Gaherty is now afraid of his neighbors and public places[18].  However, through it all, Mr. Gaherty has never shown any homicidal ideation[19] or any aggression or danger to others[20].  He truly suffers from a debilitating case of recurrent, chronic PTSD, severe episodes of major depressive disorder, and bipolar I, mixed disorder.

---

[7] *Id*., at 3, 75, 93, 183, 200, 216, 219, 233, 243, 265, etc.

[8] *Id*. at 4, 13, 57, 75, 216, 254, 306, 401, 506, 707, etc.

[9] *Id*. at 95, 132, 148, 181, 216, 270, 357, 372, 386, 401, 418, 479, etc.

[10] *Id*. at 935 and 1037.

[11] *Id*. at 4, 13, 39, 40, 112, 114, 132, 139, 164, 182, 200, 201, 216, 217, 235, 244, 254, 270, etc.

[12] *Id*. at 270, 901, 956, 957, 1000, 1052, 1053, 1074, 1083, 1084, 1122, 1123, etc.

[13] *Id*. at 324, 836, 956, 957, 1000, 1003, 1046, 1052, 1074, 1178, 1216, 1217, etc.

[14] *Id*. at 4, 21, 57, 148, 181, 234, 243, 254, 278, 314, 341, 401, 479, 1107, and 1667.

[15] *Id*. at 40, 57, 75, 113, 130, 148, 181, 184, 216, 243, 270, 297, 314, 357, 916, 1107, and 1202.

[16] *Id*. at 40, 93, 297, 479, 506, 707, 721, and 916.

[17] See EXHIBIT 1.

[18] EXHIBIT 7 at 113, 161, 181, 200, 216, 234, 235, 243, 254, 269, 278, 289, 290, 297, 314, etc.

[19] *Id*. at 148, 164, 182, 201, 217, 235, 243, 244, 254, 270, 279, 290, 297, 307, 316, 342, 387, 402, etc.

[20] *Id*. at 163, 181, 290, and 807.

5

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

Mr. Gaherty does not stand before this honorable court denying, justifying, or excusing the statements he made.  He, more than perhaps anyone else, finds them reprehensible.  He has no recollection of making the statements and when he heard them, begged for them to stop.  However, when viewed through the lens provided by Mr. Gaherty's mental and medical health records, the Court can now take these statements for what they are: delusional rantings of a man who, through no fault of his own, suffers from a complex combination of mental illnesses.

USSG §5H1.3 states: "*Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines*."  Mr. Gaherty's mental illnesses clearly fall within the contemplation of USSG §5H1.3.  In fact, it is because of his mental illness that he ever made the statements.  Prior to June 23, 2016, Mr. Gaherty had no criminal history.  Other than an arrest for public intoxication in 2018 (for which there is no record he was ever convicted), his only other brush with the law is the present case.

### 1. *August 8, 2022*

In this call, Mr. Gaherty clearly states to Congresswoman Waters he is calling in response to a *perceived* call to action against him when he states "…you fuck with my people…all that racism…causing controversy"[21] and later "…we coming for you, bro…like you told those motherfuckers to go and do what they had to do."[22]

### 2. *October 19, 2022*

---

[21] 2:23-CR-00184, D. E. 31, at. Pg. 7.

[22] *Id.*

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

In this call, Mr. Gaherty states in part "I'm gonna listen to you, uh, Maxine, threaten people…all this violent shit you advocate…"[23]

The calls Mr. Gaherty made are consistent with a person who is in the throws of a mental break down and consistent with his diagnosis of paranoid delusions of persecution.  No, the defense is not stating that Mr. Gaherty accurately recounted any statements made by Congresswoman Waters or any other listed phone call recipient. However, the phone calls show a person who, in a delusional and paranoid state, made a series of horrible statements in response to something he (erroneously) perceived as persecution against him.

Based on the totality of the evidence before the Court, it is clear that Mr. Gaherty suffers from chronic PTSD after being shot at his home, bipolar disorder, and paranoid delusions of persecution.  It is because of his extensive mental illnesses that he made these calls.  Mr. Gaherty's mental illnesses by themselves and in combination with other offender characteristics are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.  Therefore, a downward departure under USSG §5H1.3 is warranted in Mr. Gaherty's case.

### D. USSG §5H1.4: Physical Condition

Before being shot on June 23, 2016 as discussed *supra*, Mr. Gaherty suffered a moderately severe and severe lumbosacral canal compromise at the L 4-5 and L5-S1 vertebrae, respectively.[24]  During his recuperation from his gunshot wound, Mr. Gaherty suffered a related infection to his heel that caused him to wear a prosthetic brace on his leg, injured his elbow during a fall, and must still use a cane to walk.

---

[23] *Id.* at pg. 9.

[24] EXHIBIT 7, at 1596.

Additionally, on September 4, 2007, Mr. Gaherty's vehicle was struck from behind by another vehicle with such force that the striking vehicle flipped upside down in the next lane of traffic.[25]   The driver of the other vehicle was transported by EMS, and, in the confusion, they left Mr. Gaherty on the side of the road.  Mr. Gaherty later went to his physician who ordered a CT scan of his head.  The exam showed a "white spot" in Mr. Gaherty's brain near his temple.[26]

USSG §5H1.4 states in part *"[p]hysical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.*"

Mr. Gaherty's physical condition by itself, and certainly in combination with other offender characteristics, is present to an unusual degree and distinguishes his case from the typical cases covered by the Sentencing Guidelines.  The BOP is not equipped to care for Mr. Gaherty's complex cocktail of mental and physical ailments.  Home confinement would be more efficient and just under his circumstances.  Therefore, USSG §5H1.4 justifies a downward departure in Mr. Gaherty's case.

### E.  USSG §5H1.1: Age

Mr. Gaherty is a sixty-two-year-old man.  Although that is not considered "elderly," USSG §5H1.1 states in part *"[a]ge (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age,*

---

[25] EXHIBIT 3.

[2626] Both Mr. Gaherty and Counsel attempted to locate records of the medical exam, but, because of their age, all attempts were unsuccessful.

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

*individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.*" Once again, when considering Mr. Gaherty's age in conjunction with his physical and mental health conditions, a form of punishment such as home confinement would be more efficient and much less costly than incarceration. Therefore, under USSG §5H1.1, the Court is justified in granting a downward departure in Mr. Gaherty's case.

### F. USSG §5K2.13: Diminished Capacity

USSG §5K2.13 states in part *"[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.*"

As shown *supra*, all of the relevant conduct in the present case occurred while Mr. Gaherty suffered from a significantly reduced mental capacity brought about by a series of mental illnesses. Additionally, as stated *supra*, there exists a clear and significant nexus between Mr. Gaherty's mental illnesses and his conduct in this case. The mental illnesses that caused Mr. Gaherty's diminished capacity substantially contributed to the commission of the offense. The phone calls Mr. Gaherty made were the result of his well-documented paranoid delusions of persecution. Therefore, under USSG §5K2.13, the Court is justified in granting a downward departure in Mr. Gaherty's case.

### G. USSG §5C1.1: Imposition of a Term of Imprisonment

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

USSG §5C1.1 clearly states in subsection (f) *"[i]f the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment."*

First, under *Booker[27]*, since 2005 the United States Sentencing Guidelines are advisory, not mandatory.

Additionally, the Sentencing Guidelines themselves give the Court a method to sentence a defendant convicted of a crime whose final offense level falls under Zone D of the Sentencing Table.

Application Note 10 addresses defendants who are "zero point offenders."[28] Application Note 10(B) states in part *"A departure, including a departure to a sentence other than a sentence of imprisonment, may be appropriate if the defendant received an adjustment under §4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range overstates the gravity of the offense because the offense of conviction is not a crime of violence or an otherwise serious offense."*

In the present case, the Sentencing Guidelines do overstate the gravity of the offense, not because of the content of Mr. Gaherty's phone calls, but because he committed no act in furtherance of carrying out his threats against anyone.  Mr. Gaherty only made phone calls while suffering paranoid delusions of persecution.  He did not confront Congresswoman Waters (or anyone else).  He did not go to Congresswoman Waters' (or anyone else's) office or home.  He did not even travel to the State of California.  The threats Mr. Gaherty made over the phone were grandiose and not credible.  He never could have, nor ever attempted, to follow through on them.

---

[27] *Booker,* at 260 – 262.

[28] USSG §5C1.1, comment. (n. 10(B)).

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

Therefore, under USSG §5C1.1, the Court is justified in granting a downward departure in Mr. Gaherty's case.

### H. USSG §5K2.0: Grounds for Departure

Should the Court find that any one of the above-listed factors insufficient on its own to justify a downward departure from the recommended Sentencing Guideline range, the Guidelines authorize the Court to downwardly depart based upon a combination of enumerated factors.

USSG §5K2.0(c) states in part *"[t]he court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, only if—*

*(1) such offender characteristics or other circumstances, taken together, make the case an exceptional one; and*

*(2) each such offender characteristic or other circumstance is—*

 *(A) present to a substantial degree; and*

 *(B) identified in the guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted*."

Mr. Gaherty's case clearly meets the strictures of USSG §5K2.0(c). First, any individual offender characteristic listed above by itself warrants a downward departure from the recommended Sentencing Guidelines range. However, should the Court disagree, certainly when Mr. Gaherty's offender characteristics and other circumstances are taken together, this case is an exceptional one. Furthermore, each above-listed offender characteristic (mental illness, physical condition, age, diminished capacity, etc.) is present to a substantial degree and identified by the Sentencing Guidelines as a possible ground for departure.

The Court has ample reason to grant a downward departure in Mr. Gaherty's case and he is asking that the Court do so for the above-listed reasons. These same reasons give the Court reason to not only downwardly depart from the recommended Sentencing Guidelines range, but to also grant a downward variance under 18 U.S.C. §3553(a) as discussed below.

## III. FACTORS FOR A DOWNWARD VARIANCE FROM THE RECOMMENDED GUIDELINES AND DETERMINING THE SENTENCE UNDER 18 U.S.C. §3553(A)

Under 18 U.S.C. §3553(a), the law instructs the Court to consider (a) the nature and circumstances of the offense, (b) the history and characteristics of the defendant, (c) protecting the public from future crimes of the defendant, (d) providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, (e) to reflect the seriousness of the offense, promote respect for the law, and to provide a just punishment for the offense, and (f) to provide adequate deterrence to criminal conduct[29]. The Court must start at the guideline range and then use its discretion to impose a sentence that meets the sentencing goals.

The Court's discretion to vary from the guidelines is at its zenith when it determines (a) that a particular case is atypical for its guideline range or (b) that a particular Guideline fails to properly reflect the sentencing goals in 18 U.S.C. § 3553(a).[30] In the present case, both *Kimbrough* prongs are present.

Mr. Gaherty's guideline recommends a sentence far greater than necessary to achieve the sentencing goals.

---

[29] 18 U.S.C. § 3553(a)

[30] *Kimbrough v. United States*, 552 U.S. 85, 109 (2007).

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

**A. 18 U.S.C. § 3553(a): The Nature and Circumstances of the Offense**

Mr. Gaherty made a series of terrible, deplorable, phone calls from his home in Houston, Texas.  He does not deny this.  Mr. Gaherty still has no memory of making any of the calls listed by the government.  However, each time he has listened to the phone calls, he has stated that he is the person making the call.  Had he not been suffering from a crippling series of mental illnesses, Mr. Gaherty never would have committed the present offense.

**B. 18 U.S.C. § 3553(a): The History and Characteristics of the Defendant**

Brian Michael Gaherty was born in Detroit, Michigan.  His father, a World War II veteran, was the sole bread winner for the Gaherty family.  When he was very young, Mr. Gaherty's father moved the family to Houston, Texas.  Soon thereafter, Mr. Gaherty's father began to express signs of serious psychological wounds he suffered during the war.  Mr. Gaherty's father was eventually diagnosed with paranoid schizophrenia and hospitalized.  While institutionalized, Mr. Gaherty's father underwent electric shock treatments as an archaic attempt to cure him of his illness. The treatments failed.  Mr. Gaherty recounted a time when he went to visit his father and found him wheelchair bound, covered in his own feces.  Heartbroken, Mr. Gaherty promised his father that he would bring him home and care for him.  Mr. Gaherty did so until the day his father died.

Mr. Gaherty undoubtedly inherited his mental illnesses from his father. However, and perhaps more importantly, when Mr. Gaherty as an impressionable youth saw how his father was "treated" at the hands of the mental health providers, he developed a fear of seeking any help for symptoms he might have had before he was shot on June 23, 2016.

For all of his life, Mr. Gaherty has demonstrated that he is a good person and a dedicated family man.  By reviewing the letters[31] attached hereto, the Court can gain a clearer picture of who the real Brian Gaherty truly is.  To determine a just sentence as 18 U.S.C. §3553(a) requires, the Court must view Mr. Gaherty not just as the person who committed this offense, but who he is as a whole.

Dr. Nicole Thompson, who has known Brian Gaherty for over forty years, describes him as an outstanding neighbor to her grandparents, "***not a threat to society or anyone else in the community,***" kind to the elderly, and takes outstanding care of people.[32]

Frankie Wilburn, the widow of a slain police officer, who has known Brian Gaherty for approximately fifty-three years recounts how he took care of his mother until she died, stayed with Ms. Wilburn's mother when she needed a caretaker, and is a friendly, loving person who helps anyone who needs it.[33]

Deacon David Johnson describes Brian Gaherty's generosity and recounts his donation to the church's youth education program, purchasing supplies for parishioners, and helping plan the church's sixtieth anniversary festivities.[34]

Vincent Douglas, the son of a slain police officer and himself a security officer, has known Brian Gaherty since 1972.  Mr. Douglas recounts how Mr. Gaherty took care of Mr. Douglas' ill grandfather, uncle, and grandmother.[35]

---

[31] EXHIBITS 1 and 2..

[32] EXHIBIT 1, at 1.

[33] *Id*. at 2.

[34] *Id*. at 6.

[35] *Id.* at 12.

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

Geraldine Hatfield, who has known Brian Gaherty for over fifty years describes to the Court that her husband can no longer see well enough to drive.[36]

She tells the Court how Brian used to drive her husband around town for his errands.[37]

Jacquelyn Mills has known Brian Gaherty for over fifty years.[38]  She describes Brian as part of the family who has always been there to take care of her elderly parents.[39]

Margaret Smith describes Brian Gaherty as someone who always helps the neighborhood after storms and hurricanes.[40]  She writes to the court "***I would love to have 20 Brians in the neighborhood and I trust him implicitly.  He is in no way dangerous, reckless, or a threat to the community.  He is an asset.***"[41]

Mary Noble describes Brian as an upstanding member of the community.[42] She believes the medicine he was on played a role in his current offense.[43]  She also recounts for the Court a time when Brian got off the bus one day, he saw a man lying on the sidewalk.[44]  He went home and returned where he covered the man with a blanket and placed a cup of hot coffee next to him.[45]

---

[36] *Id*. at 15.

[37] *Id*.

[38] *Id*. at 16.

[39] *Id*.

[40] *Id*. at 18.

[41] *Id*.

[42] *Id*. at 32.

[43] *Id*.

[44] *Id* at 33.

[45] *Id*.

15

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

The letters contained in EXHIBIT 1 are critical to the Court's assessment because they come from Brian Gaherty's community. This is the very community to whom the Court will release Mr. Gaherty. They do not want him to be locked up. They want him in their community. They need him in their community.

### C. 18 U.S.C. § 3553(a): To Protect the Public from Future Crimes of the Defendant

Other than the present case, Mr. Gaherty has no criminal history. The Court has no basis to believe that Mr. Gaherty will reoffend or commit another offense in the future.

### D. 18 U.S.C. 3553(a): To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Mr. Gaherty's extensive medical needs are well documented in this Sentencing Memorandum and the attached exhibits. Although there is no need to repeat his ailments here, as with the Sentencing Guidelines, 18 USC §3553(a) also recognizes that the Court should consider Mr. Gaherty's medical needs when pronouncing sentence.

### E. 18 U.S.C. § 3553(a): Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide a Just Punishment for the Offense

Mr. Gaherty has demonstrated to the Court that he fully appreciates the seriousness of his offense and has shown a respect for the law. He is beside himself with grief over the content of the phone calls he made. He has no prior criminal convictions and, as such, the Court should recognize that the present offense is aberrant behavior for Mr. Gaherty. A prison sentence for this offense would not serve to benefit any party in this case.

16

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

### F. 18 U.S.C. § 3553(a): To Provide Adequate Deterrence to Criminal Conduct

Mr. Gaherty has demonstrated that he has already been deterred from committing criminal conduct in the future. The last known phone call he made was in February 2023. He was not arrested until April 10, 2023. Mr. Gaherty has performed exceedingly well under pretrial supervision and the Court can trust that he will behave just as well under post-conviction community supervision.

### G. A prison sentence below the USSG recommended range will suffice to protect the public from Mr. Gaherty

While on pretrial release, Mr. Gaherty has demonstrated that he will not reoffend in the future.[46]. Should the Court still harbor reservations about how successfully Mr. Gaherty will conduct himself, a term of supervised release can ensure that if Mr. Gaherty engages in conduct (not just criminal conduct) the Court deems unsatisfactory, he will face a SRT violation and could be remanded back into federal custody.

## IV.   CONCLUSION

The United States Probation Department and United States Attorney's Office's calculations of the United States Sentencing Guidelines contemplate a sentence far harsher that what is just for Mr. Gaherty under 18 U.S.C. §3553(a). Mr. Gaherty therefore prays the Court downwardly depart and vary from the Sentencing Guideline range and grant him a term of confinement satisfied with time already served in the

---

[46]*See, e.g. United States v. Munoz-Nava*, 524 F.3d 1137, 1149 (10th Cir. 2008) (affirming a significant downward variance because the District Court considered the defendant's "behavior while on a year-and-a-half pretrial release," which was "found to be exemplary"); *Pepper v. United States*, 562 U.S. 476, 488 (2011) ("Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'").

17

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

1   United States Marshals' custody and place him on a term of supervised release long

2   enough that the Court feels would ensure he will continue with the life he has lived

3   before commission of the present offense and while on pretrial release.

4

5

6   Dated: May 28, 2024

7                                                      RESPECTFULLY SUBMITTED,

8                                                      **RICHARDS CARRINGTON, LLC**

9                                                      By:  /s/ *George B. Newhouse, Jr.*
                                                              George B. Newhouse, Jr.
10

11                                                     JOSEPH F. VINAS
                                                       1210 W. Clay, Suite 12
12                                                     Houston, Texas 77019

13                                                     *Attorneys for Defendant*

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                               18

28

1
2

## <u>PROOF OF SERVICE</u>

3
4
5

     I am counsel in this matter and am over the age of eighteen years, and not a party to the within action.  My business address is: 545 S. Figueroa Street, 7th Floor, Los Angeles, California 90071. On May 28, 2024, I served the document(s) as follows:

6
7
8
9

     **BY ELECTRONIC SERVICE:**  I caused such document(s) to be electronically filed in accordance with the electronic filing procedures of this Court; service has been effected upon the parties, whose counsel of record is a registered participant of CM/ECF, via electronic service through the CM/ECF system.

10
11

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

12
13

     Executed on May 28, 2024 at Los Angeles, California.

14
15
16

                          /s/ George B. Newhouse, Jr.

                          George B. Newhouse, Jr.

17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**